A99A0031. MANNING v. THE STATE.
(515 SE2d 663)

SMITH, Judge.

Jeree Manning was indicted on one count of violating the Georgia Controlled Substances Act for possessing marijuana with intent

to distribute. She was found guilty by a jury, her motion for new trial, as amended, was denied, and she appeals. In her sole enumeration of error, she contends the trial court erred in denying her motion for mistrial when the State elicited a response from the arresting officer showing that he had arrested Manning on a different occasion shortly before the arrest for the charged crime. We find no reversible error, and we affirm.

Before trial, Manning moved the court to prohibit the State from mentioning any prior arrests, particularly because the officer who arrested her for the charged crime had also arrested her for an unrelated offense about three weeks before that. But contrary to Manning's suggestion in her enumeration of error that the State was ordered not to mention the previous arrest, the trial court did not rule on the motion. Rather, the trial court asked if the State wished to respond to the motion, and the prosecutor responded by stating that he did not "intend to make any reference. We will instruct the witness accordingly."

It is true that the State elicited a response from the arresting officer that clearly was designed to allude to the prior arrest. But this was done in rebuttal.

Officer E. E. Earls of the Atlanta Police Department Red Dog Task Force testified that he was conducting surveillance near Manning's home on November 15, 1994, because of drug activity. Using binoculars, from his place of concealment he observed some people smoking marijuana in front of Manning's house, and then he saw Manning and a man walk over to a car parked in the driveway. Manning entered the car and removed a plastic bag containing several smaller bags of what appeared to be marijuana, and handed it to the man. The man then took the individual bags and spread them out along a wall near the car. Manning walked to the edge of the driveway and began looking up and down the street, and other people began coming up to the man and buying the baggies of marijuana. Earls observed four or five of these transactions before calling for backup and making arrests. In Earls's opinion, based on his experience, Manning was acting as a lookout. Manning and the man making the sales were both arrested. No mention of the prior arrest was made during the State's case-in-chief.

During Manning's presentation of evidence, she called her next-door neighbor. This witness testified to Manning's good character by answering the statutory questions concerning reputation. He also was a fact witness, and he disagreed with Earls's version of the facts. He testified that Manning was inside her house until police officers handcuffed several people in her front yard, including the neighbor himself (whose wife had called the police), and that Manning was arrested as soon as she stepped outside the house.

The State, apparently believing that the neighbor was confusing the events of November 15, 1994, with events that transpired on October 4, 1994 (the date of Manning's previous arrest), sought to show that the neighbor was testifying to events that took place on the date of the prior arrest, because on that date Manning apparently *was* arrested immediately upon stepping out of her house. The State asked the neighbor on cross-examination: "Are you sure this didn't happen on October 4th?" The witness responded that he was "positive." The State then asked: "Okay. What happened on October 4th," whereupon Manning objected. A colloquy ensued, during which the State first argued that it was entitled to show bad character by referencing the prior arrest because Manning had placed her character in issue. The trial court correctly rejected this argument, noting that "[a]n arrest really doesn't tell you anything." The court observed that the State had the right to cross-examine the witness to show that he was confusing two dates, but it had to be done very carefully because "other considerations," such as prejudice, must be taken into account, and no mention was to be made of the October 4 arrest. The cross-examination of the neighbor then proceeded without further incident.

Manning testified in her own behalf. She agreed with her neighbor's version of the facts, testifying that she was inside[1] when the others were detained and that she was arrested as soon as she stepped out of the house. The State asked Manning on cross-examination if, at the time of this incident, she told the police officers that her father was a sergeant with the Atlanta Police Department, and she admitted she "sure did."

The State then recalled Earls in rebuttal, and he testified that Manning made no statements to him at the time of this incident. Continuing, the State then tried to ask Earls if Manning had "ever made the statement that she was ―," when Manning interposed an objection. The trial court cautioned the State against leading the witness, and the State asked Earls if Manning had made a statement to him on October 4. Again Manning objected, and the court allowed this question to be answered, so long as the witness answered narrowly and specifically. The same question was asked and answered once more, and Manning moved for a mistrial. The court denied the motion.

The court allowed the State another question, over objection, and the prosecutor asked: "What was the statement made to you by the defendant on October 4, 1994?" Before Manning's next objection,

---

[1] Manning testified she was actually inside another neighbor's home when the others were handcuffed.

Earls managed to respond: "She told me that I could not arrest her because —." Manning objected, again moved for a mistrial, and requested a curative instruction. Although the court sustained Manning's objection, the judge did not rule on the renewed motion for mistrial and refused the request for a curative instruction.

On appeal, Manning contends the trial court erred in denying the motion for mistrial. The transcript shows that the only denial of a motion for mistrial came after Earls testified only that Manning had made a statement to him on October 4. No ground for declaring a mistrial had been shown at that point. The prior arrest had not yet been mentioned, and Manning was not unduly prejudiced by testimony that on October 4 she had said something to Earls. No ruling was made on the second motion for mistrial, so it cannot form the basis for the enumeration of error.

The State was incorrect in arguing that because Manning had introduced evidence of good character, the State could introduce the arrest as impeachment evidence showing bad character. When a defendant chooses to place his character in issue by offering the testimony of a witness as to his general good reputation in the community, the State may prove the defendant's general bad reputation and may also show specific instances of bad character by presenting competent evidence that the defendant has been convicted of prior offenses. *Jones v. State*, 257 Ga. 753, 758 (363 SE2d 529) (1988). But testimony showing a witness has been arrested is not a proper method of impeachment. *Hollis v. State*, 225 Ga. App. 370, 371 (2) (484 SE2d 54) (1997).

The State correctly argues that it was entitled to impeach both the neighbor and Manning by disproving the facts testified to by them. OCGA § 24-9-82. But in this case, as pointed out by the trial court, it was not necessary to refer to Manning's arrest to accomplish this end. We must agree with Manning that the mention of the prior arrest may have prejudiced her; the evidence was indeed in conflict and it was not overwhelming. We note that this possible prejudice to Manning could have been cured by a proper and immediate instruction to the jury. But this does not provide a basis for reversal, because Manning has not enumerated as error the trial court's refusal to give such an instruction and may not enlarge her enumeration of error to encompass such a contention. *Young v. State*, 217 Ga. App. 575, 576 (1) (458 SE2d 391) (1995).

*Judgment affirmed Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 7, 1999.

*John R. Mayer*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.