## 35415. HAMILTON *v*. THE STATE.

Decided December 2, 1954—Rehearing denied December 16, 1954.

*Bob Humphreys, George Thomas,* for plaintiff in error.
*J. Bowie Gray, Solicitor-General,* contra.

GARDNER, P. J. ■ Error is assigned in the bill of exceptions on the overruling of general and special demurrers to the indictment. These exceptions are without merit for the reasons set out in *Hamilton* v. *State,* ante, the demurrers and the count of the indictment in question being identical except for the amount of the check involved.

■ Ground 1 of the amended motion for new trial attempts also to assign error on the overruling of demurrers. This is never a proper ground for a motion for new trial. See Code (Ann.) § 6-701, catchword, "Demurrer."

■ Special ground 2 of the amended motion contends that the court erred in refusing to declare a mistrial on motion of movant, because, in response to an objection of movant's counsel to a question propounded by the solicitor to a witness, the court replied: "I will let her answer it. We want the truth about it"; and further contends that this statement was error because the court complimented the witness and intimated and expressed an opinion in the presence of the jury that the witness would tell the truth.

This remark deals with future testimony and not with facts which have been proved; accordingly, it does not come within the inhibition of Code § 81-1104, making it mandatory to reverse any case in which the court has expressed or intimated an opinion "as to what has or has not been proved, or as to the guilt of the accused." See *Allen* v. *State,* 194 *Ga.* 178 (1) (21 S. E. 2d 73). Whether or not reversal of a case would follow from the remark made would depend not only on whether it was error, but on whether the error was harmful to the movant, and this must appear from the ground of the motion for new trial, which fails to show that the remark complained of here was prejudicial to the defendant's case. The question asked the witness is not set out, the answer received is not indicated, the materiality of the testimony does not appear, and the ground is in consequence incomplete and presents no issue for disposition by this court.

■ Special ground 3 complains of testimony of C. E. Croker, a witness for the State, as follows: "Q. What, if anything, happened to you later in the afternoon? A. I was arrested. Yes, sir, I was arrested about eight o'clock on Saturday night on that date. I had last seen Marcus Hamilton about thirty minutes before I was arrested. He was parked at the Dixie Ice Cream Company, it was an ice cream company here. I don't know the name of it. I am not too well acquainted with Tifton, it was just above the Farmers Hardware Company. I was not present at any time that any check was cashed or may have been cashed at Citizens Hardware Company." It is contended that this court committed reversible error because the witness referred to a separate and distinct transaction and put the character of the defendant in issue when the defendant had not done so. It seems that counsel for the defendant overlooks the fact that Croker himself testified that on the day of the crime he and the defendant went to Tifton for the purpose of committing the offense charged in the indictment and other similar offenses. Croker made out a clear case of conspiracy between him and the defendant. Moreover, there is sufficient evidence with circumstances surrounding this case to show that the defendant Croker and others were carrying on this offense in the vicinity of Tifton. Croker further testified that the defendant had in his possession the check in question, and other checks drawn on the same tobacco warehouse, for the purpose of using the checks just as the evidence showed that the defendant did in the instant case. This ground is without merit.

■ Special ground 4 complains of the following alleged testimony of Ross, an investigator of the G. B. I.: "Q. Mr. Ross, did you examine the record in the office of the Georgia State Patrol in Atlanta, Georgia, and did your examination reveal that the driver's license which Mrs. Rutland has testified about and which bears the name of H. W. McGain and which said driver's license was taken off of C. E. Croker at the time he was arrested, was that driver's license issued to one William Marvin Griffin?"

The whole evidence is as follows: "Direct examination: I investigated this case against Marcus Hamilton. I found a driver's license with the name of H. W. McGain, and I have it in my possession. It is numbered 255539, veteran's license. It

was issued to William Marvin Griffin and William Marvin Griffin's name is erased and the name has been typed on that driver's license. Q. In other words, the driver's license you hand to me and that one that Mrs. Rutland saw was issued to . . . *Solicitor-General: I object to that on the grounds that it is leading and I further object to it because Mrs. Rutland has not testified as to anything about it, and he is the defense's witness and they have not laid the foundation for this testimony. The Court: Lay the foundation for your testimony.* The witness: I obtained this driver's license from Charles Croker. I don't recall that I ever exhibited this driver's license to Mrs. Rutland. I do recall showing this driver's license to Croker, Marvin Griffin and Marvin Griffin's wife. Q. Did you investigate to whom. . . *Solicitor: Your honor, I object to that type of questioning. The Court: I sustain the objection. George Thomas, of counsel for defendant: He just testified that it was issued to William Marvin Griffin. J. Bowie Gray, Solicitor-General: He cannot testify that this particular license was issued to William Marvin Griffin. George Thomas, of counsel for defendant: He did testify to that.* Q. Was your testimony that this license was issued to William Marvin Griffin? A. I will testify again. I stated that Number 255539 was issued to William Marvin Griffin, 918 West Central Avenue, Moultrie, Georgia. *J. Bowie Gray, Solicitor-General: I object to that unless he shows how he knows it was issued to William Marvin Griffin.* A. I went to Atlanta and went through the files . . . *Solicitor-General: I object to him going into what he found out in Atlanta. The Court: It is ruled out what you saw in Atlanta, or what you heard in Atlanta. Counsel for defendant: Your Honor, may we ask this question, 'Did you check the record of the State Patrol?' The Court: That is not the way to produce evidence—it is ruled out. Solicitor-General: Your Honor, we submit that the records in Atlanta would be the highest and best evidence, and we object to that question. The Court: That's right.* Q. Mr. Ross, in the investigation of this case, has anyone else made a confession of cashing this check to you? *The Court: That is hearsay. It is irrelevant to this case. Counsel for defendant: Your Honor, I asked if he had investigated the case and they have a man on trial here and I asked if in his investigation there has been an-*

*other man that confessed to this crime. The Court: That is ruled out.* The witness: I have arrested other persons in connection with other cases, but not this case. I have not arrested anyone else on this particular case. I did not arrest Allen Lassiter in Moultrie and bring him up here. I have never talked with Mr. Allen Lassiter with reference to this case. I have not talked with William Marvin Griffin in this case. I have some other check cases but not this one, I believe I did talk to him about this one. I have talked with William Marvin Griffin about other cases and this one, too." No reversible error is shown in this special ground.

■ Special ground 5 complains because the court refused to permit Lassiter, a witness for the defendant, to testify that he had been arrested after the first trial and before the second trial for the same offense for which the defendant was tried. We think that the court was right. Counsel for the defendant argues that the court erred in this regard because the identity of the defendant depended upon the evidence of Mrs. Rutland, and that she swore positively at the trial of the defendant in the instant case that she recognized the defendant as being the one who passed the forged instrument to her and that, if Lassiter had been permitted to testify, he would have shown that Mrs. Rutland did not identify the defendant as being the one who uttered and passed the forged instrument. In determining this and the other special grounds, we have found it necessary to refer to portions of the evidence, as revealed by the record, not set out in the special grounds themselves. Then, too, counsel for the defendant in this ground argues that Mrs. Rutland caused the warrant to be issued against Lassiter. The evidence does not justify this statement of counsel in their argument. To the contrary, the whole evidence of the sheriff and Mrs. Rutland is to the effect that Mrs. Rutland had nothing to do with the issuance of this warrant or in procuring its issuance. From just what portions of the record counsel reaches this conclusion, we do not understand. This ground has no foundation of merit.

■ Special ground 6 complains with reference to testimony concerning the handwriting of the defendant, which counsel insists was illegally admitted by the court. This ground is not specifically argued by counsel for the defendant and no authority

is cited to sustain the contention. We have read the whole record and find no reversible error in this ground.

■ Special ground 7 assigns error because the court excluded a warrant which had been sworn out against Lassiter charging him with the offense of uttering a forged check. No evidence was offered to show that the warrant against Lassiter had anything to do with the transaction for which the defendant was on trial. The court properly excluded the warrant.

The court did not err in denying the motion for new trial for any of the reasons assigned.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*