## A00A0984. KENT v. THE STATE.
(538 SE2d 185)

MILLER, Judge.

Greg Kent was convicted of rape, aggravated sodomy, and aggravated assault. For sentencing purposes, the conviction for aggravated assault merged with the rape count. Following the denial of his motion for new trial, Kent filed this appeal. Kent now challenges the sufficiency of the evidence, the composition of the jury array, an evidentiary ruling, and the trial court's refusal to give a charge on fornication. Having examined each of these issues and finding no error, we affirm.

1. Kent contends that the rejection of his pretrial challenge to the array violated his constitutional rights and the principles of fundamental fairness. He argues that the panel was comprised of too few persons of his race, gender, and age.

Kent misperceives the law. While traverse jury lists must consist of a representative and fair cross-section of the community to the fullest extent possible, the same is not true of an array.[1] Provided that persons are not systematically excluded on the basis of race or other cognizable grouping, and provided that the jurors comprising a panel are randomly selected from a representative pool, the selection process is not inherently defective.[2]

In this case, the Traverse Jury Certificate filed in the clerk's

---

[1] *Williams v. State*, 213 Ga. App. 458, 459 (1) (444 SE2d 831) (1994).

[2] See *Meders v. State*, 260 Ga. 49, 54 (2) (c) (389 SE2d 320) (1990); *Jackson v. State*, 270 Ga. 494, 497 (4) (512 SE2d 241) (1999) (defendant needed to present evidence showing that young adults had been consistently underrepresented).

office and dated May 19, 1998, showed that "as to groups: whites, blacks, men and women over 18 in Dougherty County, that imbalance is below 5%, which is the threshold." This same certificate indicated that the statistical imbalance on the traverse jury list between males and females was 0.2 percent and the disparity for whites was 0.14 percent and for blacks was 0.26 percent.[3] The trial court determined that the traverse jury list was representative of the population in Dougherty County, and no evidence showed otherwise. The court also found that the 35 jurors selected for Kent's case had been "randomly selected by a computer drawing from what I have determined to be a properly constituted list." Since Kent failed to establish any flaw in the selection process such as manipulation, misuse, or systematic exclusion of cognizable groups, the trial court properly rejected his challenge to the array.[4]

2. Kent asserts that the verdict is contrary to law and without sufficient evidence to support it. We disagree.

On appeal, the evidence must be viewed in the light most favorable to the verdict, and Kent no longer enjoys the presumption of innocence.[5] Although this court determines the sufficiency of evidence, it neither weighs the evidence nor assesses witness credibility.[6]

When so viewed, the evidence established that Kent forced the victim to engage in sexual intercourse and oral sex. To coerce the victim into submission, Kent shoved, choked, and beat her, causing her to defecate upon herself. These crimes occurred at the victim's residence where she and Kent had resided together until their break-up the month before.

After threatening to kill her, Kent pushed the victim down on the bed. Kent said, "I told you and I told you over and over, if I can't have you nobody else is going to have you." Ignoring her pleas, he orally sodomized her. Kent resumed choking her, pinned her down, forced her legs apart, then raped her notwithstanding her continued pleas. When Kent finally left her home, the victim immediately called police.

Photographs depicting visible injuries to the victim's neck, legs, and vaginal area were admitted into evidence. Just hours after the rape, the Director of the Sexual Assault Nurse Examiners Program, Connie Knowles, conducted a physical examination of the victim.

---

[3] While the percentage of blacks age 18 and over in the county was 45.26 percent, the percentage of blacks age 18 or over on the list was 45.52 percent.

[4] *Jewell v. State*, 261 Ga. 861, 862-863 (3) (413 SE2d 201) (1992); see *Pryor v. State*, 231 Ga. App. 136, 137 (1) (497 SE2d 805) (1998).

[5] *Sanders v. State*, 236 Ga. App. 578 (512 SE2d 678) (1999).

[6] *Sweet v. State*, 237 Ga. App. 613, 614 (1) (516 SE2d 317) (1999).

Knowles testified as an expert in the field of the examination of sexual assault victims. According to Knowles, the multiple tearing she observed in the victim's vaginal area was consistent with the use of force and not with normal sexual intercourse. The day after the sexual assault, Sergeant Eddie Jones interviewed the victim, and she wrote out her statement in his presence. According to Jones, although "she changed maybe a couple words," her statement was consistent. Jones testified that he noticed bruises on the victim's neck and legs.

3. Kent contends that the trial court erred in permitting a written statement made by the rape victim to go out with the jury.

After the statement was read into evidence and the prosecutor wanted to show it to the jury, Kent objected to its length and the fact that portions of it were stricken out and overwritten. While cross-examining both the detective and the victim, defense counsel vigorously pursued the inconsistencies and alterations the victim had made while composing her statement. Finding the actual appearance of the statement in issue, the trial court admitted the statement over a continuing witness objection.

As a general rule, allowing the written statement of an alleged victim to go out with a jury violates the continuing witness rule.[7] Although the State claims that the document was not offered for the purpose of bolstering the victim's testimony but because the text of the statement had several scribbles, scratches, mark-throughs and cross-outs, the State cites no case and we have found none that would permit the admission of this exhibit.[8] The victim was available to testify and did so. Allowing the statement to go out with the jury violated the continuing witness rule. Nevertheless, a judgment need not be reversed unless the error is harmful. Since the evidence contained in the statement was also brought out during the trial and the evidence of guilt was overwhelming, there was no harm.[9] In light of the medical testimony and photographic evidence showing the use of brute force, and since the victim was extensively cross-examined about her written statement and any inconsistencies or alterations, it is highly probable that the jury's view of this exhibit did not contribute to the verdict.[10]

4. Kent contends that the trial court erred by providing the jury with a written copy of the charge and by denying his requested

---

[7] *Gough v. State*, 236 Ga. App. 568, 570 (2) (512 SE2d 682) (1999); see OCGA § 24-2-4.

[8] Compare *Smith v. State*, 236 Ga. App. 122, 126 (4) (511 SE2d 223) (1999) (victim's statement was properly admitted as part of res gestae).

[9] *Gough*, supra, 236 Ga. App. at 570 (2).

[10] *Hinton v. State*, 233 Ga. App. 213, 214 (1) (504 SE2d 49) (1998).

charge on fornication.[11] He argues that since he and the victim routinely had engaged in consensual sexual intercourse, the critical issue was use of force. He claims that the jury should have been permitted to make a force determination.

Among other requirements, a jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law.[12] Whenever any part of a requested charge is confusing, inapt, incorrect, or not authorized by the evidence, denial of the request is proper.[13]

Contrary to Kent's contention, the offense of fornication is not a lesser included offense to the crime of rape.[14] Thus, the trial court correctly refused to give an instruction misstating the law.[15] Moreover, the trial court properly instructed the jury that "[i]n both rape and aggravated sodomy the State must prove beyond a reasonable doubt that the victim did not consent to the act of aggravated sodomy or rape." The court further charged, "[c]onsent on the part of the alleged female victim is fatal to a conviction for rape and for aggravated sodomy." The charge as a whole covered the concept of force that Kent desired.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED AUGUST 11, 2000.

*Slemons & Spahos, David E. Slemons*, for appellant.

*Kenneth B. Hodges III, District Attorney, Gregory W. Edwards, Frances D. Hakes, Assistant District Attorneys*, for appellee.

---

[11] At the motion for new trial hearing, the trial court stated for the record that the court routinely provided the jury with a written copy of the charge as given and also charged the jury that it was to consider the instructions as a whole. Although Kent enumerated this procedure as error, he abandoned the issue by not addressing it in his brief. Court of Appeals Rule 27 (c) (2). In any event, no error occurred. *Anderson v. State*, 262 Ga. 26, 28 (3) (a) (413 SE2d 732) (1992) (trial court is authorized but not required to give a written copy of the charges to the jury).

[12] *Register v. State*, 229 Ga. App. 648 (1) (494 SE2d 555) (1997).

[13] *Jones v. State*, 200 Ga. App. 519, 521 (2) (c) (408 SE2d 823) (1991).

[14] *Speer v. State*, 60 Ga. 381, 382 (1878) (as a matter of law, "fornication cannot be forcible and against the woman's will").

[15] See *Register*, supra, 229 Ga. App. at 648 (1).